**THE GOVERNMENT OF THE VIRGIN ISLANDS, Bureau of Internal Revenue, Plaintiff,**

v.

**William LANSDALE, Marianthi Lansdale, La Isla Virgen, Inc., Marina Pacifica Oil Company, and Lonesome Dove Petroleum Company Defendants**

**No. CIV.1998–243MR.**

District Court, Virgin Islands, Appellate Division, D. St. Croix.

July 30, 2001.

Richard M. Prendergast, Esq., Asst. Attorney General, St. Croix, VI, for the plaintiff.

Gregory H. Hodges, Esq., Chad C. Messier, Esq., St. Thomas, VI, for the defendants.

## MEMORANDUM

MOORE, District Judge.

William and Marianthi Lansdale [the "Lansdales"] have moved to dismiss the case or for entry of summary judgment. The Virgin Islands Bureau of Internal Revenue [the "VIBIR"] has opposed the motion and filed a cross motion for summary judgment. The Court heard argument on the Lansdales' motion and took the matter under advisement. For the reasons set forth below, the Court will deny the Lansdales' motion. Consideration of the VIBIR's cross motion for summary judgment has been suspended pending this decision.

## I. FACTS

This case is a continuation in the VIBIR's long-thwarted attempt to collect unpaid income taxes from a succession of Lansdale-owed corporations, La Isla Virgen, Inc. ["La Isla Virgen" or "LIV"], a Delaware corporation authorized to do business in the Virgin Islands in 1981, Marina Pacifica Oil Company ["Marina Pacifica"], a California corporation, and Lonesome Dove Petroleum Company ["Lonesome Dove"], a Texas corporation. It seeks to reduce those unpaid income tax assessments to judgment and to collect any unsatisfied portion of that judgment from the Lansdales personally. Lonesome Dove is the only one of the three corporations [collectively the "Lansdale corporations"] to have survived the successive mergers of La Isla Virgen into Marina Pacifica and Marina Pacifica into Lonesome Dove. The Lansdales were/are the sole shareholders of each corporation, and at least one of the Lansdales was/is a principal officer and director of each corporation at all relevant times. The VIBIR is the agency of the Government of the Virgin Islands which administers and enforces income tax laws in the United States Virgin Islands.

### A. The Lansdales' Unsuccessful Scheme to Avoid Income Taxes

In 1980, William Lansdale owned a limited partnership interest in the Marina Pacifica Limited Partnership ["MPLP"] on which he expected to realize substantial gain upon its redemption. In early 1981, Lansdale learned about the so-called 28(a) loophole in the Virgin Islands tax law supposedly derived from the interplay between section 28(a) of the 1954 Revised Organic Act of the Virgin Islands ["section 28(a)"], including its definition of "inhabitant of the Virgin Islands," and the mirrored reflection of section 882 of the Internal Revenue Code per the "mirror theory" for applying the substantive provisions of the federal tax code to the Virgin Islands. The perceived loophole in theory would permit a United States domestic corporation that became an inhabitant of the Virgin Islands to pay no income tax on its

stateside or worldwide income.[1] Despite being warned by their tax attorney that "there's always a possibility that he could lose," the Lansdales incorporated La Isla Virgen in March of 1981 to use the perceived section 28(a) loophole specifically to keep from paying income taxes on the anticipated gain from the MPLP redemption. The Lansdales capitalized LIV with the partnership interest in MPLP, for which LIV received $3 million in cash (plus $684,000 more in 1983), promissory notes with a face value of $4 million, and certain oil and gas interests [the "oil and gas interests"]. Lansdale and his wife were LIV's sole shareholders and he acted as its president and a director.[2]

On April 27, 1981, Lansdale incorporated Marina Pacifica in California, with him and his wife again the sole shareholders and directors. Soon after, LIV leased its oil and gas interests to Marina Pacifica, with an option to purchase, which Marina Pacifica exercised in 1983 by giving LIV a $6 million promissory note. The Lansdales and LIV also intended to shield the gain on this sale from income tax through the so-called section 28(a) loophole. The VIBIR, however, never accepted that a stateside corporation could avoid income taxes in this manner, and, in 1986, 1987, and 1988, issued timely notices of deficiency of income taxes to LIV for tax years ending February 1982, 1983, 1984, 1985,

1. Section 28(a) provides that inhabitants of the Virgin Islands may satisfy all United States and Virgin Islands taxes on income from all sources by payment to the VIBIR.

> The ... proceeds of any taxes levied by the Congress on the inhabitants of the Virgin Islands, ... shall be covered into the treasury of the Virgin Islands, ... *Provided,* That the term "inhabitants of the Virgin Islands" as used in this section shall include all persons whose permanent residence is in the Virgin Islands, and such persons shall satisfy their income tax obligations under the applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands into the treasury of the Virgin Islands ....

Revised Organic Act of 1954 § 28(a); 48 U.S.C. § 1642. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2000), *reprinted in* V.I. CODE ANN. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2000) (preceding V.I. CODE ANN. tit. 1) ["REV. ORG. ACT"].

Literally substituting "Virgin Islands" for "United States" in section 882 of the Internal Revenue Code, as required by the mirror theory (more fully discussed in *VIBIR v. Chase Manhattan Bank,* Civ. No.1993–093, slip. op. at 12–19 (D.V.I. St. Thomas and St. John Div. July 30, 2001), would make a corporation which qualified as an inhabitant of the Virgin Islands liable only for taxes on income de-

rived from a trade or business connected with the Virgin Islands but not on any of its stateside or worldwide source income. ·

By reading section 28(a) together with the mirrored I.R.C. § 882, some argued that a corporation incorporated in a state and not the Virgin Islands and qualified as an inhabitant of the Virgin Islands, that is, having its primary place of business in the Virgin Islands, could escape taxation on all its stateside income. The erroneous theory of the perceived loophole was that there was no taxing entity to collect the tax on the stateside income: (1) section 28(a) permitted an inhabitant of the Virgin Islands to file its return in the Virgin Islands and pay its tax liability solely into the treasury of the Virgin Islands and (2) the mirrored I.R.C. § 882 required the corporation to pay taxes only on income derived from a trade or business in the Virgin Islands, but not on its stateside source income.

2. For a more detailed discussion of the Lansdales transactions, see La *Isla Virgen, Inc. v. Olive,* Civ. Nos.1986–263, 1988–012, and 1988–270 (D.V.I. St. Thomas & St. John Div. Feb. 28, 1991), *aff'd,* 27 V.I. 462, 952 F.2d 1393 (3d Cir.1991), *cert. denied,* 506 U.S. 817 (1992) and Memorandum of Law in Support of the Government's Cross–Motion for Summary Judgment and in Opposition to the Lansdales' Motion to Dismiss or for Summary Judgment, Civ. No. 98–243, Jun. 3, 1999, at 4–10.

and 1986. Other judicial and legislative proceedings thwarted the VIBIR's efforts to reduce LIV's tax liability to judgment. In 1986, for example, this Court erroneously recognized the 28(a) loophole by invalidating the tax deficiencies of another so-called 28(a) company. *See Danbury, Inc. v. Olive,* 627 F.Supp. 513 (D.Vi.1986) (O'Brien, J.).[3] The Court of Appeals promptly reversed and held that section 28(a) provided no such tax loophole for stateside corporations like LIV. *See Danbury, Inc. v. Olive,* 820 F.2d 618 (3d Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987).

In 1986 and twice in 1988, LIV filed timely petitions with this Court for the redetermination of its tax deficiencies. In 1988, LIV merged into Marina Pacifica. The Court consolidated the petitions for redetermination of tax liability and ultimately granted summary judgment in favor of the VIBIR, agreeing that the Lansdale corporations owed $21,895,969.00 for unpaid taxes, interest, and penalties. *See La Isla Virgen, Inc. v. Olive,* Civ. Nos. 1986–263, 1988–012, and 1988–270 (D.V.I. St. Thomas & St. John Div. Feb. 28, 1991) (Giles, J.), *aff'd,* 27 V.I. 462, 952 F.2d 1393 (3d Cir.1991), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).[4] Af-

ter LIV failed to post an appeal bond, the VIBIR made assessments against LIV and demanded payment from LIV on April 5 and 8, 1991. On April 9th, the VIBIR followed these with a notice of lien against La Isla Virgen in the amount of $21,895,969.00 for unpaid taxes, interest, and penalties. Marina Pacifica, which had acquired all the assets and had expressly assumed the debts and liabilities of LIV through the 1988 merger, refused or neglected to pay the assessments.

To further confuse matters, on March 17, 1992, the Lansdales merged Marina Pacifica into Lonesome Dove, a Texas corporation of which the Lansdales are again the sole shareholders. Lonesome Dove survived the merger and expressly acquired the debts and liabilities, as well as all the assets, of LIV. Lonesome Dove, too, has failed and refused to pay any of its assessed taxes.

While LIV and its successors were litigating the VIBIR's tax assessments, the Lansdales caused their corporations to dissipate their assets. LIV's balance sheet for the fiscal year ending February 28, 1985, showed total assets of over $17 million, including some $10 million in certificates of deposit ["CD"] and $6 million in

---

**3.** In apparent response to this decision, the Congress prematurely included provisions in the Tax Reform Act of 1986 ["TRA 1986"] designed to close the perceived loophole for tax years 1987 and forward, and retroactively for tax years before 1987 for which the VIBIR could still assess income tax deficiencies. LIV, along with Bizcap, were two corporations which had managed to secure exclusions from the retroactive closure of the loophole. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, Title XII, § 1277(c)(2). Shortly after Congress enacted the TRA 1986, the Court of Appeals reversed the district court and ruled that the section 28(a) loophole never existed in the first place. *See Danbury, Inc. v. Olive,* 820 F.2d 618 (3d Cir.1987).

**4.** The principle issue was whether section 1277(c)(2)(E) of the TRA 1986, excluding LIV

from the retroactive repeal of the perceived loophole, relieved LIV of its United States source income tax liability to the Virgin Islands for the years 1982 to 1986. This Court found that this question had been litigated and resolved by the Court of Appeals' decision in *Bizcap v. Olive,* 892 F.2d 1163 (3d Cir. 1989) (Congress' closure of the perceived loophole, and any special exceptions to retroactive application thereof, were a nullity as a result of *Danbury* 's determination that no 28(a) loophole ever existed), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990). The Lansdale corporations' attempt to distinguish their exception from Bizcap's failed, opening the way for the VIBIR to assess tax deficiencies against them.

notes receivable from Marina Pacifica for the purchase of the oil and gas interests, with non-tax liabilities totaling only $253,067.99. (VIBIR's Ex. P.) During 1985, Lansdale personally borrowed $4.6 million from a St. Thomas branch of Citibank by assigning corporate CDs as collateral. At least $3 million of the loan was used to build a private residence in Palm Springs, California. From 1988 to 1989, interest on the personal loan was in part paid by Marina Pacifica. (VIBIR's Ex. Q–6.) In 1989, while La Isla Virgen was pursuing the redetermination of its tax deficiencies in this Court, the Lansdales caused LIV to use its funds in a CD to pay off the balance of Lansdale's personal loan with Citibank. (VIBIR's Ex. R–3.) During this time, millions of dollars in other corporate CDs and bank accounts inexplicably went missing. Lansdale personally borrowed $1.2 million from Chase Manhattan Bank in St. Thomas, again by using a corporate CD as collateral. In 1989, $600,000 of that loan was paid down using funds from the corporate CD. (VIBIR's Exs. S–2 and V–2.) Also during this time, Lansdale received bank statements at his home address in California and regularly withdrew funds from the corporate CDs and transferred them out of the Virgin Islands. (VIBIR's Exs. T and U.)

## B. The VIBIR's Attempts to Collect on the Assessment

In 1992, fearing the expatriation of corporate assets from the Virgin Islands, the director of the VIBIR petitioned this Court for the appointment of a receiver. The petition claimed that only about $1 million out of LIV's original $16 million in assets remained in the Virgin Islands. The petition further documented several conveyances of property from the Lansdale corporations to the Lansdales personally. This Court granted the petition on September 15, 1992, and appointed a local attorney as tax receiver for the corporations ["receiver" or "tax receiver"]. (Defs.' Ex. 4 (Order Appointing Receiver, *Thomas v. Lonesome Dove Petroleum Co.,* Civ. No.1992–79 (D.V.I. St. Thomas & St. John Div. Sept. 15, 1992) (Fullam, J.)).)

The tax receiver, with the VIBIR's cooperation, located and secured assets over the next few years that rightfully belonged to the Lansdale corporations. The receiver liquidated the office building in St. Thomas for $625,000 (Defs.' Ex. 6) and the Lansdales' Palm Springs residence for $1,900,000 (VIBIR's Ex. K–1). He also collected a small sum in rents from the St. Thomas office building. The majority of the assets of the Lansdale corporations, however, had been in millions of dollars in CDs. Through loan defaults, exorbitant pretax dividends, and transfers to other Lansdale accounts, these liquid assets had been dissipated before the receiver could recover them.

In 1993, the VIBIR commenced a levy action against accounts belonging to the Lansdale corporations held at Chase Manhattan Bank. *See VIBIR v. Chase Manhattan Bank,* Civ. No.1993–093 (D.V.I. St. Thomas & St. John Div., filed June 16, 1993). After the bank had advised Lansdale of the levy action, he defaulted on his personal loan secured by a corporate CD. Chase then offset the $600,000 remaining on the personal debt using funds from the Lansdale corporations' CD.

On December 4, 1994, the tax receiver filed a complaint against the Lansdales on behalf of Marina Pacifica and Lonesome Dove. (Defs.' Ex. 20 (Compl., *Knoepfel v. Lansdale,* Civ. No.1994–156 (D.V.I. St. Thomas & St. John Div. filed Dec. 6, 1994) [the "receiver litigation"]).) The tax receiver alleged that: (1) La Isla Virgen, Marina Pacifica and Lonesome Dove were sham corporations designed to permit the Lansdales to conduct personal business transactions under the corporate veil,

which resulted in improper financial gain and the defrauding of creditors; (2) the Lansdales used their fiduciary positions for their own personal benefit; (3) the Lansdales breached their fiduciary duties of good faith and fair dealing; and (4) the Lansdales acted "malicious[ly], willful[ly], and wanton[ly], and in total disregard of the rights and needs of the ... corporations." *(Id.)* In 1996, a government official replaced the local attorney as tax receiver. In June of 1996, this Court denied the VIBIR's motion to intervene in the receiver litigation against the Lansdales. (Defs.' Exs. 13 and 15.) The VIBIR had sought permission to claim on its own behalf that: (1) La Isla Virgen had not satisfied its $21,895,969 deficiency for unpaid income taxes, interest and penalties; (2) the mergers of La Isla Virgen into Marina Pacifica and Marina Pacifica into Lonesome Dove left them liable for the income taxes assessed to La Isla Virgen by agreement and by operation of law; (3) the Lansdales exercised complete control over their various corporations and caused them to defraud creditors by divesting the corporations of assets; and (4) the Lansdales were liable for any tax deficiencies of the corporations as all three corporations were the alter egos and nominees of the Lansdales. (Defs.' Ex. 15.) In 1997, the successor tax receiver and the Lansdales reached a settlement in the receiver litigation which provided for the dismissal of the receiver's complaint against the Lansdales with prejudice. The Court accepted the settlement and dismissed the receiver litigation with prejudice on September 12, 1997. (Defs.' Ex. 19 (Stipulation for Diss. with Prejudice, *Knoepfel v. Lansdale*, Sept. 12, 1997)

("the complaint in the captioned proceeding shall be dismissed, with prejudice ....").)

In 1998, the VIBIR independently filed the instant complaint against the Lansdales and their corporations seeking a judgment for the income tax assessment against La Isla Virgen. The VIBIR's complaint restated its earlier proposed intervention complaint. The VIBIR has alleged that: (1) it was entitled to the tax deficiency assessed against La Isla Virgen; (2) Marina Pacifica and Lonesome Dove had, by agreement and operation of law, assumed all of the liabilities of La Isla Virgen; (3) as La Isla Virgen, Marina Pacifica and Lonesome Dove were the alter egos of the Lansdales, the Lansdales were personally liable for any tax obligations; and (4) the Lansdales were the nominees of the corporations and thus personally liable for any tax obligations.[5]

## II. DISCUSSION

The Lansdales move to dismiss the complaint against them under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim because it is barred by the statute of limitations. They also move for summary judgment under Rule 56 based on the doctrine of res judicata. The Court will deny both motions.

### A. The Court Has Personal Jurisdiction over the Lansdales.

There is no question that LIV and its successor corporations are subject to the personal jurisdiction of this Court. They all transacted business, maintained bank accounts, and owned an office build-

---

**5.** In May of 2000, VIBIR sought to amend its complaint to include an additional count of fraudulent conveyance as well as provide new facts and legal theories. The Lansdales objected to the amended complaint on the grounds of undue delay and bad faith design to harass—due in part to the quintupling in length of the original complaint. This Court rejected the Lansdales arguments in 2001. *See VIBIR v. Lansdale*, Civ. No.1998–243 (D.V.I. St. Thomas & St. John Div., Jan. 31, 2001) (mem. and order granting leave to file amended complaint), *available at Opinions,* http:///www.vid.uscourts.gov.

ing in the Virgin Islands, clearly subjecting them to personal jurisdiction in the Virgin Islands.[6] Only the Court's personal jurisdiction over the Lansdales individually is contested, and the VIBIR has the burden to establish such jurisdiction by a preponderance of competent evidence. *See Kressen v. Federal Ins. Co.*, 122 F.Supp.2d 582, 584–85 (D.Vi.2000).

■ Jurisdiction over an individual cannot be based solely on jurisdiction over his or her corporation. *See* 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1069, at 370–72 (1987). An individual's transaction of business in the Territory solely as a corporate officer does not create personal jurisdiction over the officer, even though the corporation is subject to in personam jurisdiction. "However, if the corporation is not a viable one and the individuals are in fact conducting personal activities and using the corporate form as a shield, a court may pierce the corporate veil and permit assertion of personal jurisdiction over the individuals." *Id.* at 372–74.

■ This Court will pierce the corporate veil to accept personal jurisdiction over the Lansdales because the facts on record demonstrate by at least a preponderance of the evidence that the Lansdales owned and operated their corporations for the purpose of transferring future tax liabilities through the corporations and back to themselves.[7] Indeed, even if the standard were clear and convincing evidence, I would find that the VIBIR has met its burden based on the evidence before me. To summarize, the evidence shows that the Lansdales engaged in the unauthorized diversion of corporate funds and assets to themselves to the detriment of creditors, including the VIBIR, used their corporations as mere shells and conduits for a single venture, and failed to maintain arm's length relationships with their corporations. The Court will therefore disregard the corporate entities under the laws of the corporations' respective states of incorporation, namely, Delaware, California, and Texas.[8]

6. This Court sitting in diversity exercises personal jurisdiction over a non-resident defendant pursuant to Fed.R.Civ.P. 4(e) under the forum's long-arm statute and the Due Process clause of the Fourteenth Amendment which requires that the defendant have certain "minimum contacts" with the forum. *See In re Tutu Wells Contamination Litig.*, 846 F.Supp. 1243, 1264 (D.Vi.1993) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Virgin Islands long-arm statute gives this Court personal jurisdiction over a person on "a claim for relief arising from the person's (1) transacting any business in this territory ... [or] (5) having an interest in, using, or possessing real property in this territory." 5 V.I.C. § 4903(a)(1) & (5). The Lansdale corporations clearly come within one or both of these jurisdictional bases and had more than minimum contacts with the Virgin Islands.

7. The Court adopts a "preponderance of the evidence" standard for deciding whether to disregard the corporate fiction and assert per-

sonal jurisdiction over its principals. The parties have supplied no standard, and the law in this area is little developed, ranging from a prima facie showing of jurisdiction, *see, e.g., Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (applying New York law without hearing evidence on the motion to dismiss), to requiring clear and convincing proof to pierce the corporate fiction to impose liability on the merits, *see, e.g., Kaplan v. First Options*, 19 F.3d 1503, 1522 (3d Cir.1994) (to prove liability based on alter ego theory, clear and convincing proof required, including proof of fraud). Given the procedural posture of this motion, and absent authority to the contrary, a preponderance of the evidence is the appropriate standard to warrant disregard of the corporate fiction for jurisdictional purposes.

8. The Court applies the law of the state of incorporation to make this determination. *See* Restatement (Second) of Conflicts § 307 ("The local law of the state of incorporation will be applied to determine the existence and

▉▉▉ Since La Isla Virgen was the corporate vehicle Lansdale initially organized to implement his section 28(a) scheme, I look first to the law of Delaware, LIV's state of incorporation, to examine what conduct would warrant disregard of the corporate fiction. Under Delaware law, piercing the corporate veil is appropriate where the corporation is merely an instrumentality or alter ego of its owners. *See Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del.Ch.1992). Although the term "alter ego" is often used synonymously with "piercing the corporate veil," it is but one basis for bypassing the corporate shield. Other relevant factors in determining whether to disregard the corporate entity include whether it is "in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of the corporation ... are involved." *Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del.1968). Also to be considered are whether the dominant shareholders siphoned corporate funds; whether the corporation is a facade for the dominant shareholders; whether a corporation was adequately capitalized and solvent; and whether corporate formalities were followed, including payment of dividends and upkeep of corporate records. *See Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 205 (5th Cir.1995) (quoting *Harco Nat'l. Ins. Co. v. Green Farms, Inc.*, 1989 Del. Ch. LEXIS 114, No. 1131, 1989 WL 110537, *5 (Del.Ch. Sept.19, 1989)).[9]

The Lansdales capitalization of LIV with their personal share of the distribution interest in the Marina Pacifica Ltd. partnership to avoid taxes by itself would probably raise little concern. Once they qualified LIV as an inhabitant of the Virgin Islands, however, the Lansdales systematically began to intermingle their corporations' funds with their own money. Using LIV funds in CDs on deposit with Citibank N.A. in St. Thomas as collateral security, Lansdale personally borrowed up to $4.6 million from Citibank, much of which he used to construct a private residence in Palm Springs, California for himself and Mrs. Lansdale. (VIBIR's Exs. P–1 at 2 & Q–2.) The bank permitted Lansdale to set his own interest rate, so he paid only one-half of a percent (0.5%) more that the interest LIV received on its CD. (VIBIR's Exs. O–1 and O–3.) Moreover, for a time the Lansdale corporations paid part of the interest on these personal loans. (VIBIR's Ex. Q–6.) Ultimately, Citibank offset the corporate asset against Lansdale's personal loans, effectively transferring the money LIV used to buy its CD to its shareholder and director.

Similarly, Lansdale used LIV, and later Marina Pacifica, funds to secure another personal loan of more than $1.2 million, this time from Chase Manhattan Bank on St. Thomas. (VIBIR's Ex. S–3) Having become dissatisfied with Citibank, Lansdale conditioned the transfer of his corporation's account to Chase on its willingness to make personal loans to him. (VIBIR's Ex. O–4.) By again defaulting on his per-

---

extent of a shareholder's liability to the corporation ... and to its creditors for corporate debts."). Absent local law to the contrary, the restatements provide the substantive law of the Virgin Islands. 1 V.I.C. § 4; *see also In re Tutu Wells Contamination Litig.*, 909 F.Supp. at 1009.

**9.** Since this matter does not directly involve federal law, the case the VIBIR cites to sug-

gests that the Court should use federal law to determine whether to pierce the corporate veil is inapposite. *See United States v. Golden Acres, Inc.*, 702 F.Supp. 1097 (D.C.Del.1988) (default on a federal mortgage note under Federal Housing Act warranted application of federal standard rather than Delaware standard to pierce corporate veil).

sonal loan, Lansdale also had Chase use corporate funds to satisfy his personal debt of $600,000 by offsetting the corporate CD the Lansdales had caused to be pledged as collateral. (VIBIR's Exs. S-2, T-18, and 19.) The Lansdales as directors authorized the assignments of corporate assets to secure personal benefits and William Lansdale signed the documents hypothecating and assigning the corporate interests to the banks. Despite the presence of LIV's St. Thomas office, Lansdale instructed the St. Thomas branch of Chase Manhattan Bank to regularly mail LIV account statements to the Lansdales' personal residence at 1000 Lansdale Road in Palm Springs. (VIBIR's Ex. M-7.) The only reasonable explanation for this conduct is that the Lansdales interposed LIV and its successors as but a facade for the shared unity of interest of shareholders and their corporations.

Most of LIV's income for the relevant tax years came from the "tax-free" redemption and sale of what was or had been the Lansdales' own personal interests contributed as start-up capital, and not from

on-going business activities. At one point, LIV's assets consisted of $10 million in CDs and its gross income in 1985 was $1,716,434.05, of which $875,538.35 was interest income from LIV's CDs and $664,666.80 was interest income on notes. LIV's only fixed asset was the St. Thomas office building valued at about a $1 million, which brought in the remaining 1985 income of just $176,228 .90 from rent. That same year the Lansdales paid themselves a dividend of $635,000, further evidencing that the sole design of these corporations was to maneuver the Lansdales' personal assets contributed as start-up capital past the tax collectors and back to the shareholders through the hoped-for section 28(a) tax loophole.

 The Lansdales' relationships with Marina Pacifica and Lonesome Dove are governed respectively by California law and Texas law. For the most part, the factors to be considered are substantially similar to those in Delaware. The California approach is a broad one .[10] Under Texas law, courts pierce the corporate veil when: (I) the corporation is the alter ego

10. "Essentially, what a plaintiff must show is that the shareholders' interests and those of the corporation have been so unified that their 'separate personalities ... no longer exist' and 'if the acts are treated as those of the corporation alone, an inequitable result will follow.' " *Cal–Circuit ABCO v. Genesis Imaging Techs.*, 1997 U.S.App. LEXIS 33567, *3, 1997 WL 730325, *1 (9th Cir. Nov. 21, 1997); *see also Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 838–40, 26 Cal.Rptr. 806, 813–15 (Cal.Dist.Ct.App.1962) (setting out twenty-four separate factors which prior cases had relied upon). Some of the relevant California factors include: commingling funds and other assets, the unauthorized diversion of corporate funds or assets to other than corporate uses, the treatment by an individual of the assets of the corporation as his own, the holding out by an individual that he is personally liable for the debts of the corporation, the identical equitable ownership in the two entities, the identification of the

equitable owners, directors and officers thereof with the domination and control of the two entities, sole ownership of all of the stock in a corporation by one individual or the members of a family, the failure to adequately capitalize a corporation, the total absence of corporate assets and undercapitalization, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, the disregard of legal formalities and the failure to maintain arm's length relationships among related entities, the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation, of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another, or the use of a corporation as a subterfuge of illegal transactions, and the formation and use of a corporation to transfer to it the existing liability of another person or entity.

of its owners or shareholders, (II) the corporation is used for an illegal purpose, or (III) the corporation is used as a sham to perpetrate a fraud. *See Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1131–32 (5th Cir.1988) (discerning "three distinct strands of corporate disregard under Texas law" comprised of seven factors drawn from *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex.1986), *superseded on other grounds by*, Tex. Bus. Corp. Act Ann. art. 221 (West Supp.1992)).[11] Of course, it is necessary to disregard only one of the three corporations to find personal jurisdiction over the Lansdales.

Clear and convincing evidence supports the inference that the Lansdales used the petitions in *La Isla Virgen, Inc.* to gain time to siphon away more corporate assets. Once the Court of Appeals resolved the identical issues against an identically situated taxpayer, *Bizcap*, in 1989, the *La Isla Virgin, Inc.* lawsuit ceased to be a legitimate effort by LIV and Marian Pacifica to seek redetermination of their tax liability. *See Bizcap v. Olive*, 892 F.2d 1163 (3d Cir.1989). By the time the Supreme Court denied certiorari in early 1992 on the tax redetermination suit, few assets remained in Marina Pacifica (which merged into Lonesome Dove that same year). The VIBIR's proof is undisputed

that in January of 1991, one month before summary judgment was entered in favor of the VIBIR in *La Isla Virgen, Inc.*, and in successive months, the Lansdales had Chase transfer funds from Marina Pacifica's CD into an investment account, which the they withdrew immediately. (VIBIR's Exs. U–1, –2, –3, –4 and –5.) The Lansdales have not rebutted the reasonable inference arising from these withdrawals and the subsequent insolvency of LIV and Marina Pacifica that these funds were deliberately siphoned from the Lansdale corporations to avoid their legitimate tax liability. Only the St. Thomas office building and the Lansdales' personal residence in Palm Springs have been liquidated to apply to those taxes. The remaining assets are largely unaccounted for. Under all three veil-piercing formulations, such siphoning of assets to avoid a statutory tax liability rounds out the showing necessary to attribute the acts and omissions of LIV and its successors to the Lansdales personally.

■■■ Having applied these formulations to the undisputed facts, there is a preponderance of evidence, if not clear and convincing evidence, that LIV and its successors were shell corporations created to redeem the Lansdales' personal interests while avoiding all income tax on the gains

---

**11.** The following outlines the *Pan Eastern* court's allocation of the seven *Castleberry* factors to the three strands:

 I. The corporation is the alter ego of its owners or shareholders:
 (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation
 II. The corporation is used for an illegal purpose:
 (5) where the corporate fiction is used to circumvent a statute,
 (4) where the corporate fiction is employed to achieve or perpetrate monopoly,
 (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong,

 (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation.
 III. The corporation is used as a sham to perpetrate a fraud:
 (1) when the fiction is used as a means of perpetrating fraud,
 (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation,
 (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong
*See Pan Eastern*, 855 F.2d at 1131–33 (original *Castleberry* numbering maintained; *Pan Eastern* numbering converted to Roman numerals to avoid confusion).

to be realized by the redemption and sale of those interests, and, ultimately, to siphon those gains out of the Virgin Islands into their personal accounts. Because LIV, Marina Pacifica, and Lonesome Dove conducted business and owned real property in the Virgin Islands, their acts and omissions attributed to the Lansdales for jurisdictional purposes satisfy the requirements of the Virgin Islands long-arm statute. *See* 5 V.I.C. § 4903.

■ The assertion of jurisdiction over the Lansdales also satisfies due process. The inquiry is whether the Lansdales had sufficient contact with the Virgin Islands "so that the maintenance of the suit would not offend notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154 (1945). In determining what is fair, the Court considers whether, given the Lansdales' conduct and their connection with the forum, they "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559 (1980). LIV and its successors clearly should have anticipated being subject to suit in the Virgin Islands, given the nature of their business contacts, their ownership of property in the Virgin Islands, and their taking advantage of the tax laws of the Virgin Islands. Having pierced the corporate veils, the Court imputes to the Lansdales their corporations' contacts with the Virgin Islands. Stated another way, having determined that the Lansdale corpora-

tions were shells for the conduct of their personal business, I find that this conduct of personal business in the Virgin Islands, which includes defaulting on personal loans made to Lansdale by Virgin Islands branch banks, constitutes sufficient contact with this forum to satisfy due process. Accordingly, the assertion of personal jurisdiction over the Lansdales individually does not violate their due process rights.

**B. The Statute of Limitations Does Not Bar the VIBIR's Claims.**

The Lansdales argue that they are entitled to a dismissal for the VIBIR's failure to state a claim, *i.e.,* that no set of facts can entitle the VIBIR to relief because the statute of limitations bars the claim. *See* Fed.R.Civ.P. 12(b)(6). Relying on the contents of the complaint, assuming the factual allegations therein to be true and giving the Lansdales the benefit of all fair inferences which may be drawn from the allegations, I find that the ten-year statute of limitations of the Virgin Islands Tax Code, 33 V.I.C. § 1162(a), applies to this action, not the three-year period allowed to sue a corporation's principles on a judgment against the corporation, 13 V.I.C. § 344(b). *See David v. AMR Servs. Corp.,* 42 V.I. 420, 423, 191 F.R.D. 89, 91 (D.V.I.2000). The final decision in *La Isla Virgen, Inc.* was not an executable money judgment against LIV or the other Lansdale corporations under 13 V.I.C. § 344(b).[12] The VIBIR had ten years from April 1991, when it assessed the income taxes against the delinquent corporations, to bring these proceedings in court. It therefore timely filed this case on December 2, 1998.[13]

**12.** Title 13, section 344(b) of the Virgin Islands Code provides in part:

No suit shall be brought against any officer, director or stockholder for any debt or liability of a corporation, of which he is an officer, director or stockholder, until judgment be obtained therefor against the corporation, nor after three years from the date of such judgment and any such officer, director or stockholder may set up any de-

fense which the corporation might have asserted against such debt or liability.
13 V.I.C. § 344(b).

**13.** Title 33, section 1162(a) of the Virgin Islands Code provides:

Where the assessment of any internal revenue tax imposed by this subtitle or the Virgin Islands income tax law has been made within the period of limitation properly applicable thereto, such tax may be

Moreover, the VIBIR is not judicially estopped from taking this position, nor were the Lansdales prejudiced by any attempts to treat the decision as a money judgment.

1. *The Ten-year Statute of Limitations Applies to this Action Against the Corporate Defendants.*

██ Because this matter involves the VIBIR's administrative assessment and collection procedures rather than the determination of the amount of income tax due, Part II, Subtitle 1 of Title 33 of the Virgin Islands Code (33 V.I.C. §§ 701–1965) exclusively governs, and not the mirror images of the administrative procedures set forth in the Internal Revenue Code cited by the VIBIR. *See VIBIR v. Chase Manhattan Bank,* Civ. No.1993–093, slip. op. at 12–13 (D.V.I. St. Thomas & St. John Div. July 30, 2001). The Virgin Islands Code provides that the first step in collecting delinquent income taxes is the issuance of a notice of deficiency to the taxpayer. *See* 33 V.I.C. § 942. A taxpayer who receives a notice of deficiency in most cases has ninety days to petition the district court for a redetermination of both the validity and amount of the tax deficiency, during which time and during the pendency of the petition the VIBIR may not assess the deficiency.

> Within 90 days ... after the notice of deficiency ... is mailed ... the taxpayer may file a petition with the district court for a redetermination of the deficiency. Except as otherwise provided in section 1361 of this title no assessment of a deficiency in respect of any tax imposed ... and no levy or proceeding

in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90–day ... period ... nor, if a petition has been filed with the district court, until the decision of the district court has become final.

33 V.I.C. § 943(a). Petitions from VIBIR income tax determinations are filed in the District Court of the Virgin Islands. *See Dudley v. Commissioner of Internal Revenue,* 258 F.2d 182, 184–87 (3d Cir.1958) (district court, not Tax Court, has jurisdiction over petitions for redetermination of Virgin Islands tax). In this case, LIV and Marina Pacifica filed timely petitions which this Court decided on February 28, 1991, in favor of the VIBIR and found that the corporations were delinquent in the amount of $21,895,969.00 for unpaid taxes, interest, and penalties. *See La Isla Virgen, Inc.*

██ When the Lansdale corporations did not post an appeal bond to stay collection, the VIBIR was free to assess the tax deficiency against the Lansdale corporations, which it did on April 5 and 8, 1991. The corporations' failure to pay the assessment after demand opened the door to the VIBIR's present "collection ... by proceeding in court" to collect on a debt by reducing it to a judgment.[14] *See* 33 V.I.C. § 1162 ("Where the assessment of any internal revenue tax imposed by this subtitle or the Virgin Islands income tax law has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in

---

collected by levy or *by a proceeding in court,* but only if the levy is made or the proceeding begun—

(1) *within 10 years* after the assessment of the tax, ....

33 V.I.C. § 1162(a) (emphasis added).

**14.** Their neglect or refusal to pay the assessment after demand also gave rise to a lien in

the amount of $21,895,969.00 in favor of the government upon all property and rights to property belonging to the Lansdale corporations as of the date of the assessment. *See* 33 V.I.C. §§ 1031 (how the lien is created) and 1032 (when the lien arises).

court.").[15] It is this present action, which ultimately may lead to a money judgment, that must be "begun ... within 10 years after the assessment of the tax ...." *See id.*

Since there is not yet a judgment against the Lansdale corporations, the three-year statute of limitations of 13 V.I.C. § 344(b) for reducing a judgment against a corporation to a judgment against its shareholders has no application to this case. The decision in *La Isla Virgen, Inc.,* contrary to the Lansdales' assertion, was merely a ruling on LIV's and Marina Pacifica's petitions for redetermination of income tax liability, which was necessary before the VIBIR could assess a tax deficiency against the corporations. In turn, such assessment, followed by the neglect or refusal to pay it, are prerequisites to filing the present section 1162 "proceeding in court" for a money judgment. The ten-year statute of limitation at 33 V.I.C. § 1162(a)(1) applies to the VIBIR's suit, which was timely filed on December 2, 1998, some seven years and nine months after the delinquencies were assessed against the Lansdale corporations in April of 1991. The VIBIR filed this action well within the ten-year limitation period.

2. *Judicial Estoppel Is Not Appropriate.*

 The Lansdales urge this Court to invoke a theory of judicial estoppel and treat the earlier decision as an enforceable judgment based on the VIBIR's own treatment and representation of that decision as such. The test for judicial estoppel is two-fold: (1) did the party take a position inconsistent with a position formerly asserted, and (2) was either position asserted in bad faith, i.e., with intent to play fast and loose with the court. *See Donaldson v. Bernstein,* 104 F.3d 547 (3d Cir.1997) (quotations and citations omitted); *see also Government of the Virgin Islands v. Paniagua,* 922 F.2d 178 (3d Cir.1990).

The VIBIR does not dispute that it attempted to enforce the decision in *La Isla Virgen, Inc.* as a money judgment. On April 10, 1992, it filed a praecipe claiming to have obtained a "Judgment ... in the amount of $22,514,390.14" and obtained a writ of execution against LIV. On the other hand, the Lansdales have not asserted that the writ of execution prejudiced them or their corporations, nor did the VIBIR ever recover anything pursuant to the writ.[16]

The Lansdales present two other examples of the VIBIR's use of the word "judgment" in describing the earlier decision. In one instance, the Lansdales responded to a discovery request made "in aid of execution" on the judgment for information they were required to provide even if the VIBIR had used words which did not imply a money judgment. The Lansdales, moreover, have not suggested how they would have answered differently if these words had not been used. In the other instance, the VIBIR asserted in its petition to the Court for the appointment of a tax receiver that LIV's "liability for tax, penal-

---

**15.** Collection by proceeding in court may include, for example, an action to enforce a lien. *See* 33 V.I.C. § 1663. Alternatively, "[t]he Government may ... simply sue for the unpaid amount, and, on getting a judgment, exercise the usual rights of a judgment creditor." *United States v. Rodgers,* 461 U.S. 677, 682, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (construing substantivally identical I.R.C. provisions and listing collection methods).

**16.** The Lansdales did not express their objection to the issuance of the writ of execution at the time. By failing to object or advise the Court that there was no final executable judgment, maybe the Lansdales themselves should be estopped from seeking to invoke judicial estoppel.

ties and interest as of April 5, 1991, the date of the assessment after entry of judgment was $21,895,969." (Defs.' Ex. 2 at 2–3.) This hardly calls for judicial estoppel since the court order did establish that the Lansdale corporations' tax "liability was $21,895,969."

Even if these examples could somehow satisfy the first prong of the test for judicial estoppel, the Lansdales have not proved that the VIBIR is attempting to play fast and loose with the Court. Rather, it seems more likely that the VIBIR simply was inadvertent in characterizing the decision as a judgment. In sum, the Lansdales have not shown that they have been prejudiced or that the Court relied on the mischaracterization of the decision to the detriment of the Lansdales. *See* 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4477, at 779–80 (1981) (aggrieved party must act in reliance on previous position, made under oath, to his detriment and suffer inequality of allowing opponent to reverse its position). Accordingly, the Court will not invoke judicial estoppel as requested by the Lansdales.

## C. VIBIR's Claims Against the Lansdales Personally Are Not Precluded by the Receiver Litigation.

The Lansdales assert that their settlement in 1997 of the tax receiver litigation by agreement that it be dismissed with prejudice, and this Court's dismissal with prejudice based on the stipulated settlement, preclude the present direct action by the VIBIR against them.

### 1. *Summary Judgment Standard*

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue respecting any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c); *see also Sharpe v. West Indian Co.,* 118 F.Supp.2d 646, 648 (D.Vi.2000). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the nonmovant. *See Saldana v. Kmart Corp.,* 42 V.I. 358, 360–61, 84 F.Supp.2d 629, 631–32 (D.V.I.1999), *aff'd in part and rev'd in part,* 260 F.3d 228 (3d Cir.2001). Only evidence admissible at trial shall be considered and the Court must draw all reasonable inferences therefrom in favor of the nonmovant. *See id.*

### 2. *Claim Preclusion*

 Claim preclusion is a species of res judicata whereby a final judgment *on the merits* of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action.

The Restatement, Second, of Judgments deals with the preclusive effects of judgments in civil actions. "Preclusive effects" refers to limitations on the opportunity in a second action to litigate claims or issues that were litigated, or could have been litigated, in a prior action. In general terms, these limitations include the rules of claim preclusion and issue preclusion and the concept of "privity." The *rule of claim preclusion,* see §§ 18 to 26, is that a party ordinarily may not assert a civil claim arising from a transaction with respect to which he has already prosecuted such a claim, whether or not the two claims wholly correspond to each other. The rule of issue preclusion, sometimes referred to as collateral estoppel, see §§ 27 and 28, is that a party ordinarily may not relitigate an issue that he fully and fairly litigated on a previous occasion. The concept of "privity" refers to a cluster of relationships, see §§ 34 to 61, under

which the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party . . . .

RESTATEMENT (SECOND) OF JUDGMENTS ch. 1, introduction, scope, at 1 (1971) (emphasis added). Since the judgment in the receiver litigation was entered on a stipulated settlement agreement, without the actual adjudication of any matter, issue preclusion, that is, collateral estoppel, is not involved. *See Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented.") (citing 18 WRIGHT, MILLER & COOPER, *supra,* § 4443, at 384–85).

■ The Restatement specifically provides that:

A valid and final personal judgment is conclusive between the parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, the claim is extinguished and merged in the judgment and a new claim may arise on the judgment (see § 18);

(2) If the judgment is in favor of the defendant, the claim is extinguished and the judgment bars a subsequent action on that claim (see § 19).

RESTATEMENT (SECOND) OF JUDGMENTS § 17 (1971). The consent judgment in *Knoepfel v. Lansdale* thus extinguished the *receiver's claims,* "includ[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* § 24(1). Accordingly, a new tax receiver would be precluded from raising in a subsequent suit any additional theories of liability in support of the same claims. Similarly, the rule against claim-splitting would generally bar the tax receiver from asserting any new claims in a subsequent suit, if the claims could have been brought in the first action. Hence, a court-appointed tax receiver would be precluded from bringing the claims stated in the VIBIR's complaint against the Lansdales, even though the VIBIR has raised additional claims and additional theories of liability.[17]

■ Since the stipulation of dismissal with prejudice resulted in a final judgment precluding any additional claims by the tax receiver, the question remaining is whether the tax receiver was in privity with the VIBIR, or represented the VIBIR, so that the consent judgment also precludes the VIBIR's claims. The Restatement describes the necessary relationship thusly:

A person who is not a party to an action but who is represented by a party is bound by . . . a judgment as if he were a party. A person is represented by a party who is: . . . the executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary . . . .

RESTATEMENT (SECOND) OF JUDGMENTS § 41(1)(c) (1971). This Court has held that privity of parties exists when there is a close or significant relationship between parties or when a non-participating party's interest is represented by or derivative of a party to the litigation. *See Carteret*

---

**17.** It is the claim, not the theory, that is precluded based on identity of the underlying transactions. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 25 (1971) (claim preclusion applies even when new grounds or theories or evidence is presented or new remedies or forms of relief are sought); *Brown v. Felsen,* 442 U.S. 127, 138, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (holding that claims arising from same transaction and previously available to plaintiff are also barred even if not asserted in first proceeding).

*Savings Bank v. Pelican Beach Props., Ltd.*, 27 V.I. 285, 291, 1992 WL 209614 (D.V.I.1992). While the VIBIR claimed that a receiver appointed in a tax enforcement action had the additional "purpose to satisfy the income tax liability of the taxpayer over which he was granted control,"[18] the tax receiver did not represent the VIBIR. A receiver does not represent any party, but is "a fiduciary of the court"—a neutral party "appointed by the court to receive and preserve the property or fund in litigation, and receive its rents, issues, and profits, and apply or dispose of them at the direction of the court ...." BLACK'S LAW DICTIONARY 1268 (6th ed.1990); *see also Federal Home Loan Mortgage Corp. v. Spark Tarrytown, Inc.*, 829 F.Supp. 82, 85 n. 6 (S.D.N.Y.1993) ("A receiver is not the agent of ... the party who sought his appointment, but is solely an arm of the court.").

Even assuming that the tax receiver started out representing the VIBIR, however, the VIBIR would not be bound by the receiver's representation if the tax receiver was not prosecuting the action with due diligence and reasonable prudence on behalf of the VIBIR and the Lansdales were on notice of this failure of representation. The first comment to section 41's general rule of representation sets forth this qualification.

> Judgments for or against the representative are binding upon the person he represents, [except] the judgment is not binding on the represented person as against the opposing party in the circumstances set forth in § 42. Where those circumstances exist, the represented person may avoid being bound either by appearing in the action before rendition of the judgment or by attacking the judgment by subsequent proceedings.

RESTATEMENT (SECOND) OF JUDGMENTS § 41, cmt. a (1971). One of section 42's exceptions provides that a "person is not bound by a judgment for or against a party who purports to represent him if ... [t]he representative failed to prosecute or defend the action with due diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent." *Id.* § 42(1)(e). The first comment to this exception to the general rule of representation notes that "the party opposing the representative is entitled to assume that the representative participates in a way that will bind those whom he represents *unless* the circumstances warn the opposing party that there is doubt about the matter." *Id.* cmt. a (emphasis added).

Since the judgment dismissing the receiver's complaint rests on a stipulated settlement, I must examine the circumstances leading up to and surrounding that agreement to determine whether the Lansdales were entitled to assume that the receiver's agreement would bind the VIBIR on its claims against the Lansdales. In other words, whether the Lansdales and the tax receiver could reasonably have intended their settlement to bar the VIBIR from pursuing the instant claims against the Lansdales. *See* 18 WRIGHT, MILLER & COOPER, *supra*, § 4443, at 384 ("The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties.").

One of the most pertinent facts surrounding the settlement is the VIBIR's motion to intervene in the receiver action on the basis that it did not believe that the tax receiver was adequately representing its interests. (Lansdale Ex. 13 (Mot. to

---

18. (*See* Defs.' Ex. 5 at 2, ¶ 2 (Mem. Supp. Mot. to Amend Order Appointing Receiver, *Thomas v. Lonesome Dove Petroleum Co.*, Civ. No.1992–079 (D.V.I. St. Thomas & St. John Div. filed Sept. 25, 1992)) (citations omitted).

Intervene, *Knoepfel v. Lansdale*, Civ. No.1994–156 (D.V.I. St. Thomas & St. John Div. filed June 14, 1996)).) In particular, the VIBIR argued that the tax receiver's complaint failed to address its lien on all the property and rights to property of the corporations. (*Id.*) The magistrate judge denied the VIBIR permission to intervene, without giving any reasons for the denial. (Defs.' Ex. 15 (Order denying Mot., *Knoepfel v. Lansdale* (filed May 13, 1997)).) While the motion was pending, the Court appointed a replacement tax receiver at the request of the VIBIR. (*See* Defendants' Ex. 18 (Order Appointing Successor Receiver, *Thomas v. Lonesome Dove Petroleum Co.*, Civ. No.1992–079 (D.V.I. St. Thomas & St. John Div. Nov. 1, 1996)).) It cannot be determined from the record whether the magistrate judge denied the motion to intervene because he thought the successor tax receiver would adequately represent the VIBIR's interest, because the Lansdales objected to the intervention at the status conference on May 13, 1997, or because the parties knew the VIBIR would be filing its own action. Upon the Lansdales' motion for summary judgment, however, I must draw all reasonable inferences in favor of the nonmovant. Accordingly, I resolve any doubt about the intent of the parties to the settlement of the tax receiver litigation in favor of the VIBIR.

The Court concludes as a matter of law that the VIBIR, as a would-be intervenor who was denied intervention to protect its interest in the receiver action, is free to pursue its own claims, even if they are the same claims pending in the matter it was denied leave to join as a party. *See* 18 WRIGHT, MILLER & COOPER, *supra*, § 4438, at 352 ("Denial of intervention ordinarily leaves the would-be intervenor free to pur-

sue his claims in another action."). Having disavowed the derivative representation by the tax receiver and being denied the right to represent itself in the receiver litigation, the VIBIR had no legal standing to object to the settlement, nor was it obliged to do so. Neither the facts nor the law allow me to find that the parties to the settlement could reasonably have intended that their consent judgment would preclude the VIBIR from independently pursuing its own claims against the Lansdales.

It is noteworthy that the VIBIR in its motion to intervene claimed that the tax receiver was not pursuing the issue of the VIBIR's liens against the Lansdales. A comparison of the complaints in the receiver action and the VIBIR's present suit verifies this allegation. The Lansdales themselves admit that the VIBIR's present suit involves new claims, such as seeking to reduce the liability of the corporations to a personal judgment against the Lansdales, and they assert that this amounts to impermissible claim splitting.[19] The reasonable inference from the totality of these facts and circumstances is that the tax receiver did not adequately represent the VIBIR's interest because he had no legal authority to act on behalf of the VIBIR to foreclose its tax lien. The receiver's authority was limited to preserving and repatriating the assets of the Lansdale corporations into the remaining corporate entity to pay their tax liabilities, and liquidating the corporations if necessary. The VIBIR clearly has the authority to sue to reduce the tax assessments to personal judgments first against the corporations and then against the Lansdales, as it has done here. The tax receiver had no authority to bring this claim, as reflected in his asserting claims of the cor-

---

19. This argument for claim splitting again depends on a showing that the tax receiver served in a representative capacity for the VIBIR and is subject to the same section 42 exception.

porations against the Lansdales for breaches of various duties to the corporations. In contrast, the VIBIR's complaint asks the Court to disregard the corporate entity as a sham and impose direct liability for unpaid taxes on the Lansdales. While there may be some overlap in the theories of liability invoked in each complaint, the tax receiver was not authorized to bring the distinct set of claims made by the VIBIR in this action, and therefore the VIBIR is not bound by the receiver's settlement of his claims against the Lansdales. *See* 18 WRIGHT, MILLER & COOPER, *supra*, § 4454, at 463–64 ("The most obvious rules [limiting the extent of preclusion by representation] are that ... preclusion does not extend to litigation that carries the representative outside the scope of his authority.").

For these reasons, the Court finds that the VIBIR may litigate these claims against the Lansdales.

### III. CONCLUSION

The Court will pierce the corporate veil for the purpose of asserting personal jurisdiction over the Lansdales, because the facts on record demonstrate that the Lansdales used the corporations as a sham to transact their personal business. The Court's assertion of jurisdiction satisfies the requirements of the Virgin Islands long-arm statute and due process because the corporations' sufficient contacts with the Virgin Islands are attributable to the Lansdales personally. Further, the statute of limitations does not bar the VIBIR's claims because the ten-year statute of limitations at 33 V.I.C. § 1162(a) applies and has not yet expired. Finally, the VIBIR's claims against the Lansdales personally are not precluded by the receiver litigation, because the receiver did not represent the VIBIR, and the parties did not intend that the stipulation for dismissal would preclude the VIBIR from bringing its own suit against the Lansdales and the

tax receiver was not authorized to bring the claims now asserted by the VIBIR. For these reasons the Court will deny the Lansdales' motions to dismiss and for summary judgment.

### ORDER

For the reasons set forth in the foregoing Memorandum of even date, it is hereby

**ORDERED** that the Lansdales' motions to dismiss and for summary judgment is **DENIED;** it is further

**ORDERED** that the VIBIR's motion for leave to submit additional authority in opposition to the Lansdales' motion is **DENIED** as moot.